UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ASHLEY SOLBERG,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BOAR'S HEAD PROVISIONS, CO., INC.,<br><br>　　　　Defendant. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ashley Solberg states the following as her Complaint against Boar's Head Provisions, Co., Inc. ("Boar's Head").

## INTRODUCTION

1. This case arises from a multistate outbreak of the deadly foodborne pathogen *Listeria monocytogenes*—a type of bacteria particularly dangerous to pregnant women and unborn children.

2. Defendant Boar's Head Provisions, Co., Inc. produced, distributed and sold deli meat contaminated with *Listeria monocytogenes* throughout the country, thereby exposing countless pregnant women to the risk of severe illness; preterm labor and delivery; birth defects; and fetal death.

3. Plaintiff was one such pregnant woman. She contracted a listeriosis infection from Defendant's product and nearly lost her unborn child. This case seeks to hold Defendant responsible for all the harm caused by its contaminated products.

1

## PARTIES

4. At all times relevant for the purposes of this Complaint, Plaintiff was a resident of the State of Minnesota, residing in Coon Rapids, Minnesota.

5. Boar's Head is a corporation organized under the laws of the State of Delaware with its principal place of business and corporate headquarters located at 1819 Main St., Suite 800, Sarasota, Florida, 34236. Boar's Head is therefore a foreign corporation and is not a resident of the state of Minnesota.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and Defendant. More specifically, Plaintiff is a resident of Minnesota while Defendant Boar's Head is a resident of Delaware and Florida.

7. Venue is proper in The United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Plaintiff is domiciled in this District.

## FACTS APPLICABLE TO ALL COUNTS

8. Listeriosis is a serious illness resulting from consumption of food contaminated with the bacteria *Listeria monocytogenes*.

9. *Listeria monocytogenes* is one of the most virulent and deadly foodborne pathogens with a fatality rate of over twenty percent. Virtually all people who contract listeriosis require

hospitalization. Those who are elderly, immune-compromised, or pregnant are particularly vulnerable.

10. The bacteria can be killed by cooking or pasteurizing food products; however, contact with *Listeria monocytogenes* after such a "kill-step" will re-contaminate the food product.

11. This risk is heightened because *Listeria monocytogenes* tends to thrive in food processing environments, particularly in floor drains and other cool damp areas. Moreover, *Listeria monocytogenes* can easily be transferred from one area of a processing facility to another through, for example, simple touching of equipment, water, mist, or on workers and their clothes, shoes, and hands.

12. Additionally, in contrast to most other harmful bacteria, *Listeria monocytogenes* will grow slowly on foods stored in a refrigerator, and freezing has very little detrimental effect on the organism.

13. These characteristics render ready-to-eat deli meats particularly susceptible to *Listeria monocytogenes* contamination.

14. The risks of deli meat contamination with *Listeria monocytogenes* have been well-known in the industry for decades, particularly because of a massive turkey deli meat outbreak in 2002 in which seven people were killed and three pregnant women lost their unborn children.

15. Indeed, the regulations of the United States Department of Agriculture have adopted a "zero tolerance' policy for *Listeria monocytogenes* in ready-to-eat meat products, including deli meats. This means that any amount of the bacteria in deli meats renders them adulterated within the meaning of the United States Food Drug and Cosmetic Act.

16. Responsible manufacturers of deli meat therefore maintain and follow strict hygienic practices in their processing facilities, and implement robust environmental and product testing programs to prevent the contamination of either their products or processing facilities with *Listeria*.

17. Once a food product, including deli meat, is adulterated with *Listeria monocytogenes*, the pathogen can easily be transferred to other food products or food production surfaces if strict sanitation procedures are not followed. For example, if a knife, deli slicer, or other cutting utensil is used to cut into deli meat adulterated with *Listeria monocytogenes* and is not properly cleaned and sanitized immediately thereafter, pathogens remaining on the knife or slicer can cross-contaminate other food products and other surfaces. This problem is particularly significant in the case of cross contamination of ready-to-eat foods since they are not subject to a further "kill-step" necessary to deactivate or kill the pathogens.

18. Because of the risks posed by *Listeria monocytogenes,* the Centers for Disease Control and Prevention (hereafter "CDC"), in collaboration with state public health officials, actively monitor listeriosis cases throughout the country.

19. State and CDC labs routinely subject samples of *Listeria monocytogenes* obtained from sickened individuals to a genetic subtyping process known as Whole Genome Sequencing (WGS). The results—akin to genetic fingerprints—are then loaded to a national database used to determine whether the illnesses were caused by a common genetic strain of *Listeria monocytogenes*.

20. Through this system, the CDC detected a unique genetic pattern of *Listeria monocytogenes* by WGS among listeriosis patients in June and July of 2024.

21. As of July 31, 2024, the CDC had identified 34 people from 13 states who had contracted this unique strain of *Listeria monocytogenes* (hereafter "Outbreak Strain").

22. As part of the investigation, CDC, state, and local public health officials conducted an extensive epidemiological investigation to determine the source of the Outbreak Strain.

23. As part of this study, food consumption histories were obtained for each individual sickened by the Outbreak Strain (case patients). Of the twenty-four people able to be interviewed by public health investigators, twenty-three (96%) recalled eating meats sliced at a deli, most commonly deli-sliced turkey, liverwurst, and ham.

24. In addition, CDC conducted an analysis comparing foods reported by people in this outbreak to foods reported by people who got sick with *Listeria* but were not part of an outbreak. The analysis showed that people in this outbreak were more likely to eat deli-sliced turkey and liverwurst. This analysis showed that deli-sliced liverwurst and turkey were likely vehicles for the outbreak strain.

25. On or about July 17, 2024, officials from the Maryland Department of Health and Baltimore City Health Department collected an unopened Boar's Head liverwurst product and tested it for the presences of *Listeria*; it tested positive.

26. After this positive test became known, Boar's Head initiated a voluntary limited recall of certain liverwurst and other products on July 26, 2024.

27. The positive *Listeria* sample was sent to CDC for further testing to confirm whether it matched the Outbreak Strain; on July 30, 2024, CDC confirmed that the *Listeria* found in the Boar's Head liverwurst was indeed the Outbreak Strain.

5

28. On July 30, 2024, Boar's Head expanded its recall to include approximately 7 million additional pounds of ready-to-eat meat and poultry products, all produced at its Jarratt, Virginia processing facility.

29. The Boar's Head products that were eventually subject to recall were shipped to the Publix deli where Plaintiff purchased deli meats prior to her purchase as described below.

### Ashley Solberg's *Listeria* Infection

30. In late May of 2024, Ashley Solberg was 35 weeks pregnant with her second child.

31. Although Plaintiff lives in Minnesota, she was vacationing in Hollywood, Florida—a last trip before the new child's arrival.

32. While in Florida, she purchased and consumed Boar's Head sliced ham and also some sliced turkey from the deli at the Publix store located at 1700 Sheridan Street in Hollywood, FL.

33. Unbeknownst to Plaintiff, the deli meat she purchased and consumed was contaminated with the Outbreak Strain of *Listeria monocytogenes*.

34. After returning to Minnesota, Plaintiff started to become severely ill, suffering from diarrhea, fever, chills, headaches, and body aches, among other symptoms.

35. Concerned for herself and terrified for her unborn child, Plaintiff—now 36 weeks pregnant—sought medical attention.

36. The doctors quickly suspected an infection and ordered blood cultures from Plaintiff.

37. The culture grew *Listeria monocytogenes*, confirming that Plaintiff had contracted a listeriosis infection.

38. This positive sample was submitted to the Minnesota Department of Health for further subtyping. The Minnesota Department of Health and CDC later performed whole genome sequencing on the sample, and it proved to be a match to the Outbreak Strain.

39. Recognizing the risks posed to both mother and unborn child, Plaintiff's doctors immediately admitted her to hospital and began intensive antibiotic treatment in an effort to keep the infection from injuring or killing her child.

40. She remained in the hospital for six days as the antibiotics worked to slowly improve her condition.

41. She was eventually discharged from the hospital but continued a course of IV antibiotics for eight harrowing days.

42. Throughout this period, Plaintiff remained gravely concerned about her pregnancy and health of her unborn child.

43. Even today, Plaintiff is concerned about the lasting impact of the infection just before her labor and delivery.

## CAUSES OF ACTION

### COUNT ONE
### (Strict Product Liability – Manufacturing Defect)

44. Plaintiff incorporates the above allegations as though fully set forth therein.

45. At all relevant times, Boar's Head sourced, processed, manufactured, distributed, marketed, and sold the contaminated deli meat that is the subject of this action.

46. Boar's Head introduced the adulterated deli meat into the chain of commerce.

7

47. The contaminated deli meat was, at the time it left Boar's Head's control, defective and unreasonably dangerous for its ordinary and expected use by ordinary consumers because it was contaminated by *Listeria*, a deadly pathogen.

48. The contaminated deli meat was unreasonably dangerous because it created a strong likelihood of injury to Plaintiff if consumed in the normal manner.

49. Deli meat that is contaminated with *Listeria* is extremely and unreasonably dangerous if eaten and is particularly dangerous to immunocompromised people and pregnant women, such as Plaintiff.

50. Ordinary consumers, like Plaintiff, cannot detect *Listeria* contamination.

51. The contaminated deli meat that Plaintiff consumed was contaminated with *Listeria* when it left Boar's Head's control and it reached Plaintiff in substantially the same condition.

52. The contaminated deli meat was used in the manner expected and intended and was consumed by Plaintiff.

53. Boar's Head owed a duty of care to Plaintiff to design, process, manufacture, distribute, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe, and that was free of pathogenic bacteria or other substances injurious to human health. Boar's Head breached this duty by designing, processing, manufacturing, distributing, and/or selling deli meat contaminated with *Listeria*, which is patently unfit for human consumption and is unsafe and injurious to human health.

54. As a direct and proximate result of Boar's Head's acts and omissions, Plaintiff consumed *Listeria*-contaminated deli meat that caused serious illness.

55. As a legal and proximate cause of the defect of Defendant's product, Plaintiff sustained the injuries and damages as set forth here.

56. Plaintiffs are therefore entitled to damages in an amount to be proved at trial.

## COUNT TWO
## Breach of Implied Warranty

57. Plaintiff incorporates the above allegations as though fully set forth herein.

58. By offering its food products for sale to the general public, Boar's Head impliedly warranted that its food products were merchantable and fit for human consumption.

59. Boar's Head's contaminated deli meat contained *Listeria* and therefore was not merchantable, was not fit for human consumption, and was injurious to health.

60. As a direct and proximate result of Boar's Head's acts and omissions, Plaintiff consumed *Listeria*-contaminated deli meat that caused serious illness.

61. As a legal and proximate cause of the defect of Defendant's product, Plaintiff sustained the injuries and damages as set forth here.

62. Plaintiff is therefore entitled to damages in an amount to be proved at trial.

## COUNT THREE
## Negligence *Per Se*

63. Plaintiff incorporates the above allegations as though fully set forth herein.

64. Plaintiff consumed a food product sourced, processed, manufactured, distributed, marketed, and sold by Boar's Head that was adulterated because it contained *Listeria*, a deadly pathogen.

65. Both federal law and Minnesota law prohibit the sale of adulterated food products.

66. Boar's Head, as a provider of food products in the United States of America, owed a duty to Plaintiff to comply with 21 U.S.C. § 331 of the Federal Food, Drug, and Cosmetic Act, which states in part:

67. The following acts and the causing thereof are prohibited:

   a. The introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded;

   b. The adulteration or misbranding of any food . . . in interstate commerce;

   c. The receipt in interstate commerce of any food . . . that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

68. Pursuant to 21 U.S.C. § 342, a food is "adulterated" if it "bears or contains any poisonous or deleterious substance which may render it injurious to health."

69. Any product sold into interstate commerce that is contaminated with *Listeria* is adulterated, violating federal law.

70. Boar's Head, as a provider of food products to consumers in the State of Minnesota, also owed a duty to Plaintiff to comply with Minn. Stat. § 31.

71. Minnesota Food Law, Minn. Stat. § 31.02 *et seq.*, prohibits:

   a. The manufacture, sale, or delivery, holding or offering for sale of any food that is adulterated;

   b. The adulteration or misbranding of any food;

   c. The receipt in commerce of any food that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

72. Under Minn. Stat. § 34A.02, a food is "adulterated" if it "bears or contains any poisonous or deleterious substance which may render it injurious to health," if "it consists, in whole or in part, of any diseased . . . substance, or if it is otherwise unfit for food," or if "it has been produced, prepared, packed, or held under unsanitary conditions whereby it may have . . . been rendered diseased, unwholesome, or injurious to health."

73. Any product sold in the State of Minnesota that is contaminated with *Listeria* is adulterated, violating Minnesota law.

74. Both federal law and Minnesota law are designed to protect food consumers, like Plaintiff, from damages caused by food adulteration, like *Listeria*. Plaintiff is therefore in the class of people that are intended to be protected by these laws.

75. By producing, manufacturing, distributing, and selling into interstate commerce deli meat products that were contaminated with *Listeria*, Boar's Head violated 21 U.S.C. § 331 and was therefore negligent *per se*.

76. By producing, manufacturing, distributing, and selling deli meat products in the State of Minnesota that were contaminated with *Listeria*, Boar's Head violated Minn. Stat. § 31.02 and was therefore negligent *per se*.

77. Boar's Head's acts and omissions in violation of these laws proximately and directly caused the injuries and damages sustained by Plaintiff.

78. As a direct and proximate result of Boar's Head's acts and omissions, Plaintiff consumed *Listeria*-contaminated deli meat that caused serious illness.

79. As a legal and proximate cause of the defect of Defendant's product, Plaintiff sustained the injuries and damages as set forth here.

11

80. Plaintiff is therefore entitled to damages in an amount to be proved at trial.

## COUNT FOUR:
### Negligence

81. Plaintiff incorporates the above allegations as though fully set forth herein.

82. Defendant Boar's Head owed a duty to all customers, including Plaintiff, to produce food that was safe to eat, that was not adulterated with harmful pathogens, and that was not in violation of applicable food safety regulations.

83. Defendant Boar's Head breached this duty by, among other acts and omissions:

   a. Failing to adequately inspect and test the processing facilities used in the production of liverwurst and other deli meat products;

   b. Failing to maintain proper sanitation in its facilities;

   c. Failing to adequately inspect and test its deli meat products, including liverwurst;

   d. Failing to follow safe practices in the storage, packaging, handling, labeling, and transportation of its deli meat products, including liverwurst;

   e. Failing to warn distributors, retailers and consumers of the adulteration or potential adulteration of its deli meat products, including liverwurst.

   f. Misrepresenting the quality, safety and suitability for consumption of its deli meat products, including liverwurst;

   g. Other acts and omissions as revealed through discovery.

84. As a direct and proximate result of Defendant Boar's Head's negligence, Plaintiff sustained damages as set forth in the preceding paragraphs.

85. Plaintiff is therefore entitled to damages in an amount to be proved at trial.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays judgment against the Defendant in an amount far greater than Seventy-Five Thousand Dollars ($75,000.00) together with pre- and post-judgment interest, costs, and disbursements incurred herein and such other relief as the court may find just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Dated:    8/7/24    Respectfully submitted,

**OFT LAW PLLC**

By: _____
Brendan J. Flaherty (Bar No. 327657)
Ryan M. Osterholm (Bar No. 390152)
800 LaSalle Avenue, Suite 2260
Minneapolis, MN 55402
Telephone: (612) 268-0383
brendan@oftlaw.com
ryan@oftlaw.com

*Attorneys for Plaintiff*